# Richmond.

CHRISTIAN & GUNN v. WORSHAM, TRUSTEE.

SAME v. SKINNER AND ALS.

PEMBERTON v. SAME.

December 6th, 1883.

1. USURY—*Personal defence.*—The plea of usury is a defence personal to the debtor, certainly as concerns landed security ; and however third persons interested in the land may be incidentally affected by a usurious contract touching it, they cannot take advantage of it.

2. IDEM.—Code 1873, ch. 137, § 11 does not apply in favor of a mortgagee where a successful charge of usury has been made against a prior mortgagee in a suit brought against them both and such usury has been purged by the court.

3. EQUITABLE JURISDICTION AND RELIEF—*Case at bar.*—Under two conveyances trustee held lots in D for sole use of S for her life, remainder to her children. At request of S, trustee had under both conveyances power to sell and reinvest, and under one "an unlimited discretion to commute said lot into other property, and such property into land again as often as he may deem proper with consent in writing of said S, and not otherwise." S filed her bill against trustee and remaindermen in 1876, averring that the lots were unproductive, and asking that trustee be allowed to borrow money to build a house thereon for use of herself and children, securing the loan on the property. Under decree in the suit trustee executed trust deed to secure to P $5,000, and another to secure to C & G $2,000, money borrowed of them and used to build the house ; all which the court confirmed. Remaindermen filed bill of review in 1880, disputing the court's power to authorize trustee to do these things, and asking the reversal of the decree and the annulment of the trust deeds.

HELD :

    1. The court had jurisdiction to make the decree.

2. But the court should have provided for the protection of remaindermen by reserving a lien on the property to the amount of its fair valuation at that time, and prior in right to any lien the trustee might create.

3. Subject to the prior lien thus reserved, the entire property is liable to the trust deeds executed by the trustee.

4. IDEM—*Practice—Mode of sale.*—As to mode whereby the property should be sold in order to accomplish justice to all parties in conformity with the views of this court, see latter part of Judge Fauntleroy's opinion.

Three causes, virtually one, submitted together, being appeals from a decree of corporation court of Danville, rendered 10th July, 1882, in the chancery cause therein pending, under style of *M. T. Skinner, by, &c.* v. *J. M. C. Smith, Trustee, and others.* Opinion states the case.

*W. J. Robertson* and *B. & F. W. Christian,* for appellants, Christian & Gunn.

*Carrington & Fitzhugh,* for appellant, M. H. Pemberton.

*Guy & Gilliam,* for appellee, Worsham, trustee.

*Sands, Leake & Carter,* for appellees, Skinner and als.

FAUNTLEROY, J., delivered the opinion of the court.

The transcript of the record in this suit presents the following case :

By deed, dated January 1st, 1875, J. H. Johnston conveyed to J. McSmith, as trustee, a vacant lot in the town of Danville, Virginia, fronting 76 feet on Main street and running back 200 feet, for the consideration of $1,000.00—the said property to be held by said trustee as the separate estate of Mary F. Skinner, wife of T. C. Skinner, for her natural life, and at her death to go to her children.

By deed, dated January 30th, 1875, M. Hart & Co. conveyed to the same trustee two other lots adjoining the said former lot, one fronting 76 feet on Main street and running back 200 feet with the line of the said lot conveyed by Johnston; and the other lying immediately in the rear of the two lots aforesaid, and fronting 65 feet on an alley, and running back along the rear line of the other two lots 165 feet. The consideration of this last conveyance was $671.00; and the property was to be held by the said trustee "for the sole and separate use of the said Mary F. Skinner, wife of said T. C. Skinner, and of the children she now hath or may hereafter have by the said T. C. Skinner." Both said deeds contain power of sale by the trustee, on the written request of the said Mary F. Skinner, with direction that the proceeds of sale shall be reinvested in other property. The deed of January 1st, 1875, has the following additional and most comprehensive provision: "Hereby giving an unlimited discretion to said trustee, or any other that may be substituted in his place or succeed him, to commute said lot or parcel of ground into other property, and such property into land again, as often as he may deem proper, with the consent obtained, in writing, of the said Mary F. Skinner as aforesaid, and not otherwise."

At the April term, 1876, of the corporation court of Danville, Va., the said Mary F. Skinner, suing by her husband, T. C. Skinner, as her next friend, filed her bill in chancery, to which the said J. McSmith, trustee, and the infant children of the plaintiff were made defendants. The bill represented the ownership of the three vacant lots aforesaid, acquired under the said deeds of settlement; stated that they were entirely unproductive; and that it was to the interest of all the parties concerned to borrow a sufficient sum of money to build a residence on the lots for the occupation of the said Mary F. Skinner and her family. She further stated in her said bill that she had no other means

of improving the property; that she did not wish to sell it; and that the only way of utilizing it was to borrow money on mortgage for its improvement. The answers of all the defendants were filed, and testimony of witnesses was taken fully proving the allegations of the bill.

At the April term, 1876, of the said court, a decree was rendered authorizing the trustee, McSmith, to execute deeds of trust on the property aforesaid to secure loans to be negotiated; and requiring the trustee to execute bonds with security in a penalty double the amount borrowed, with condition that he would apply the same in building on and improving the property aforesaid.

At the November term, 1876, the trustee reported that he had borrowed from Mary H. Pemberton (one of the appellants) the sum of $5,000, and had secured the same by deed of trust to W. W. Worsham, trustee, dated July 24th, 1876, conveying the three lots aforesaid. He further reported that, finding the said sum insufficient, he had borrowed from Christian & Gunn the further sum of $2,000, and had secured the same by deed of trust to Benjamin Green, trustee, dated August 25th, 1876, conveying the same property —the lots aforesaid. And by decree rendered November 8th, 1876, the court approved and confirmed the said report of the trustee.

It fully appears in the record that the whole of the said sums of $5,000 and $2,000 were received by the said trustee, and were wholly expended by him in erecting, upon the lot conveyed by deed from Johnston, dated January 1, 1875, a handsome and commodious brick dwelling of two stories, covered with tin, and with all the modern improvements. It further appears that since the said house was built, in 1876, Mary F. Skinner and her children have occupied and enjoyed it as a residence.

At the September rules, 1880, the infant children of the said Mary F. Skinner, suing by their next friend, filed a

bill of review in the causes aforesaid, alleging, substantially, that the court had no authority to authorize the deeds of trust aforesaid to secure the loans aforesaid, and praying that the decree authorizing the execution of the said deeds of trust should be set aside, and the deeds of trust declared void.

On July 10th, 1882, the court decreed that the former decree, which authorized the execution of the deeds of trust aforesaid, was erroneous, and reversed and set it aside; and further decreed that the said deeds of trust were null and void. But the said decree proceeds further to declare that the court might properly have authorized a sale of part of the property for improvement of the residue, and that the said Mary H. Pemberton and Christian & Gunn might therefore sell, under their respective deeds of trust, that part of the property which the court considered to be unimproved, consisting of the property conveyed by the deed of January 30th, 1875, together with twenty four feet front of the lot conveyed by the deed of January 1st, 1875; and exempting from sale a lot fronting 52 feet and running back 200 feet, on which are all the improvements made with the money borrowed by her trustee from M. H. Pemberton and from Christian & Gunn. From this decree of July 10th, 1882, Mary H. Pemberton and W. W. Worsham, trustee, and Christian & Gunn have appealed to this court, and they assign as grounds of error—

1st. The deeds of trust to Worsham, trustee, dated July 14th, 1876, and to Green, trustee, dated August 25th, 1876, were adjudged and decreed to be null and void.

2d. That any part of the property conveyed by the said deeds of trust is decreed to be exempt from sale under the said deeds of trust. We think the first assignment of error is well taken.

The suit brought by Mrs. Skinner, nominally against J. McSmith, trustee, was not a suit for the sale of infants'

lands. The deeds of settlement confer ample power on the trustee to sell or commute the property, and there was no necessity for Mrs. Skinner and her trustee to resort to a court for authority to sell the property conveyed by either deed. The jurisdiction of the court was invoked, not to sell infants' lands, but to instruct the trustee how he should execute the trust, and to determine whether the purpose and the prayer of the bill could be effectuated by the trustee. The court had jurisdiction. Trust estates, and especially those in which infants and married women are interested, are peculiarly within the cognizance and control of a court of chancery. *Faulkner* v. *Davis*, 18 Gratt. 677.

The question is, the court having jurisdiction over the parties and subject-matter of the suit, was it properly exercised?

The trust property consisted of vacant, unimproved lots in the town of Danville, which was not only wholly unproductive of any income or benefit to the *cestuis que trust*, but was being diminished yearly by state and city taxes.

The court by its decrees of February 9th, 1876, and November 8th, 1876, authorized the borrowing of an amount of money requisite to make the improvements on the lands indispensably necessary to make them either useful or productive; and instructed the trustee to execute deeds of trust upon the property to secure the money borrowed, and expended judiciously and faithfully under the approval of the court, upon the trust property.

We do not think it was error in the court to permit these loans, and to authorize the trustee to execute the deeds of trust to Worsham and Green to secure the money borrowed; but the decrees ought to have provided that the sums of $1,000 and of $671, respectively, should have priority over any sums to be secured by the deeds of trust.

The infants and the corpus of the trust property would

thus have been fully protected in any event, and under this arrangement, there could be no successful objection to the validity of the deed of trust to Worsham and to Green.

The decree of July 10th, 1882, appealed from, was rendered on a bill of review; and the court should have rendered a decree giving priority to $1,671, the value of the unimproved trust property in 1876, and then holding the deeds of trust to Worsham and to Green valid securities, subordinate to that priority, and liens upon the whole land. And especially should this have been done, when it is considered that the loans of the money were made and expended by the trustee to improve the property, otherwise useless and being consumed by taxes, under the express sanction of a court of competent jurisdiction, which, by its bill of review and decree of July 10th, 1882, was correcting its own error in the decrees of 1876. By now reforming the decree appealed from, as suggested, full justice can be done to all parties.

The infants will be protected, and the intention of those creating the original trust carried out, by preserving the corpus of the trust intact, while the debts, due to those who have honestly lent their money to improve and enhance the trust property, will be repaid. And if there should be a surplus, it will enure to the beneficiaries under the original trust.

This is in accordance with equity. The principle adopted by courts of equity in cases where trustees have, even improperly and illegally, purchased for their own benefit trust property held by them, and pay for and improve it, is that relief will be granted to the beneficiaries, asking the aid of the court, only on such terms as will fully reimburse and secure to the trustee all that he has expended. For the English rule on this subject, refer to the note to *Fox* v. *Mackreth*, and to *Pitt* v.. *Mackreth*, 1 Leading C. Eq., top pages 234, 235, 259, 260, and authorities there cited.

The rule is the same in this State—*Buckles* v. *Lafferty, &c.,* 2 Rob. R. 293; *Bailey's Adm'r* v. *Robinson,* 1 Gratt. 4.

We think the court erred in exempting, by its decree of July 10th, 1882, from sale that part of the property on which the improvements were erected, being 52 feet front of the lot of 76 feet front, conveyed by the Johnston deed, while it authorized the sale, under the deeds of trust, of the 24 feet front of the Johnston lot, and all the lots conveyed to the trustee, J. McSmith, by the Hart & Co. deed.

The court most strangely decreed that the creditors had a lien only on that part of the property which their money had not improved; and that the beneficiaries should keep and enjoy, free of all charge, that part of it to which the money of the creditors had given its chief value, and furnished to the beneficiaries a comfortable and commodious house since 1876, worth a rental of at least $500 a year. The part decreed to be kept by them is worth now a minimum of $6,000.00, while the balance of the property is worth (according to the record) from $3,000.00 to $3.500.00, not more than one-half or one-third of the debts due to the deed of trust creditors, and secured on the whole property.

This is inequitable and unjust to the creditors. If the court erred in not providing, in its decrees of February, 1876, and November, 1876, for a priority of $1,671 as aforesaid, that omission can be provided for now by the decree of this court. It was only under the decree and sanction of the court that the creditors lent their money; and the equity of the creditors to be reimbursed out of the surplus remaining after deducting the original value of the unimproved lots, for their money lent, in good faith, under the decree of the court, is stronger than that of the beneficiaries to retain the land increased thousands of dollars in value by the money of the creditors. To permit this would be manifestly unjust and inequitable.

We therefore adjudge that the whole property must be

sold in parcels, so that a sale of the Johnston deed property shall be made separate from the sale of the Hart & Co. deed property; and the proceeds of the sale applied to pay—

1st. To J. McSmith $1,000, out of the Johnston lot proceeds of sale; and $671 out of the Hart & Co. lots proceeds of sale, to be held by him subject to the trust deeds of settlement.

2d. To Mary H. Pemberton $5,000, with interest from July 10th, 1882, the date of the decree.

3d. To Christian & Gunn $2,000, with interest from the 25th day of August, 1881, the date of the maturity of their debt.

4th. The surplus, if any, to J. McSmith, trustee, for the beneficiaries under the deeds to him.

5th. If the property does not sell for enough to pay the debts to Pemberton· and to Christian & Gunn, the interest on the sum of $1,671, which comes to Mrs. Mary F. Skinner during her life, must be devoted to the payment of any deficiency to the creditors.

It is insisted that the debt of Mrs. M. H. Pemberton is usurious; the decree of the court is only for the principal of $5,000, with interest from the date of the decree of July, 1882. The court purged the usury, and merged the original claim in the judgment; and it is right for the judgment to bear interest.

As to the charge of usury made by the appellants, Christian & Gunn, it is sufficient to reply that the dealing of of Mrs. Pemberton in making the loan of $5,000, was exclusively with J. McSmith, trustee; and Christian & Gunn being strangers to that transaction, could not plead usury. It is established, that, the plea of usury as applied to landed security, is personal and peculiar; and, however, a third party, having an interest in the land, may be affected incidentally by a usurious contract, he cannot take advan-

tage of the usury. *De Wolf* v. *Johnston*, 10 Wheaton, 393; *Crenshaw* v. *Clarke*, 5 Leigh, 69; *Spengler* v. *Snapp*, 5 Leigh, 491; *Michie* v. *Jeffries*, 21 Gratt. 345.

Section 11, ch. 137, p. 978, Code of 1873, does not apply to this case. The plaintiffs in the bill of review, in which Christian & Gunn were defendants, have set up the charge of usury against Mrs. Pemberton's debt, and succeeded in sustaining it. When the penalty imposed by the law was exacted by the plaintiffs in that bill, and the usury was purged by the court, the demand of the law was satisfied, and Christian & Gunn will not be permitted to exact a second penalty. In the decree of July 10th, 1882, all interest up to that date was disallowed; and the appellant, M. H. Pemberton, cannot lawfully be vexed twice for the same penalty.

For these reasons we are of opinion that the decree of the court below, appealed from, is erroneous, and must be reversed and annulled.

The decree was as follows:

This day came again the parties in these three causes, by their counsel, and the court, having maturely considered the transcript of the records, of the decrees complained of, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the records, that said decrees are erroneous. It is, therefore, decreed and ordered that the same be reversed and annulled, and that the appellees, in the second and third of said causes, pay to the appellants their costs by them expended in the prosecution of their said appeal here; and that the appellants, in the first of said causes, pay to the appellees in said cause, as the parties substantially prevailing, their costs, about them expended, in their defence of said appeal.

And this court, proceeding to render such decrees as the said corporation court ought to have rendered, it is further decreed and ordered that, in the first of these cases, the injunction granted therein be wholly dissolved, and the bill of the plaintiffs therein be dismissed with cost; and in the second of said causes, that the whole property (the subject of controversy in that case) be sold in parcels, so that a sale of the Johnston deed property shall be made separate from the sale of the Hart & Co. deed property, and the proceeds of the sale applied—

1. To J. M. Smith, trustee, out of the proceeds of sale of the Johnston lot, one thousand dollars; and out of the proceeds of sale of said Hart & Co.'s lot, six hundred and seventy-one dollars, to be held by him, as trustee, subject to the trusts specified in the respective deeds from Johnston and from Hart & Co.

2. To Mary H. Pemberton five thousand dollars with interest thereon from July 10th, 1882.

3. To Christian & Gunn two thousand dollars with interest from the 25th day of August, 1881.

4. The surplus, if any, to said J. McSmith, trustee, for the beneficiaries under the respective deeds of trust to him according to their respective rights.

5. If the property does not sell for enough to pay the debts to Mary H. Pemberton and to Christian & Gunn as aforesaid, the interest on the sum of sixteen hundred and seventy-one dollars, which comes to Mrs Mary F. Skinner, during her life, must be devoted to the payment of any deficiency to the said creditors or either of them; which is ordered to be certified to the said corporation court.

DECREE REVERSED.