W. T. FREDEKING *et al. v.* T. N. READ, *Trustee, et al.*

(No. 7441)

Submitted March 7, 1933. Decided March 14, 1933.

(Rehearing denied June 2, 1933)

*Brown W. Payne,* for appellants.

*R. F. Dunlap* and *W. A. Brown,* for appellees Fredeking and others.

*A. D. Daly,* for appellee National Bank of Summers.

MAXWELL, PRESIDENT:

This is an appeal from a decree of the circuit court of Summers County perpetually enjoining the sale of real estate by the trustee in a deed of trust pertaining to said property.

The trust mentioned was executed by John Ed Williams and wife February 25, 1921, to T. N. Read, trustee, to secure the National Bank of Summers in the payment of a note of $3,-000.00, (and renewals), executed by John Ed Williams, payable to Jordon Peters, and endorsed by the latter; and to protect the endorser. Renewals were for various amounts, less than the original, and the debt was finally curtailed to $600.-00. Jordon Peters endorsed renewals until February 10, 1925. From then until October 10, 1929, he did not appear on the note but Rush Simpson endorsed in his stead. Subsequent to the last mentioned date, both Peters and Simpson were

724

endorsers until Simpson's death. Before his death, Simpson conveyed all his property to his wife, Cora Simpson, defendant, now his widow. On March 5, 1931, Cora Simpson (Rush Simpson then being dead) paid the $600.00 balance of said debt and took an assignment from the bank of its rights under the said trust. Thereafter, T. N. Read, trustee, acting at the request of Cora Simpson and John Ed Williams, advertised the property for sale under the trust. This suit was immediately instituted. The plaintiffs are W. T. Fredeking, L. V. Taylor and First National Bank of Hinton. The defendants: T. N. Read, trustee, Jordon Peters, John Ed Williams, Anna Mae, his wife, John Ed Williams, administrator of Rush Simpson, deceased, National Bank of Summers, R. F. Dunlap, trustee, and Cora Simpson. The trial chancellor enjoined sale.

June 12, 1925, John Ed Williams and wife executed a second deed of trust on the same property to secure the National Bank of Summers in the sum of $1,300.00. That debt was curtailed to $800.00. There was still a third deed of trust executed by Williams and wife. It was made to R. F. Dunlap, trustee, January 8, 1926, to secure First National Bank of Hinton in the sum of $1,700.00. Default being made in the payment of said last named debt, the trustee, Dunlap, at the request of the First National Bank of Hinton, advertised the property for sale and sold it at public sale January 17, 1930, to W. T. Fredeking, plaintiff, for the sum of $1,500.00 cash. A few days later, Fredeking sold and conveyed the property to his co-plaintiff, L. V. Taylor. After paying costs of sale, the trustee paid $800.00 of the proceeds of the sale in discharge of the $800.00 residue due the National Bank of Summers under the deed of trust of June 12, 1925, and applied what remained of said proceeds of sale as a credit on the $1,-700.00 debt of the First National Bank of Hinton. The check of trustee Dunlap to the National Bank of Summers for the said sum of $800.00 carried this notation: ''Proceeds in full due the Natl. Bank of Summers by virtue of the sale of the John Ed Williams property by me as trustee.''

There is sharp conflict in the testimony of the cashiers of the two banks. This involves, first, conversations between them immediately prior to the making of the loan of $1,700.00

by the First National Bank of Hinton to John Ed Williams January 8, 1926. The cashier of that bank testifies that the cashier of the National Bank of Summers told him that the debt secured by the deed of trust of February 25, 1921, had been discharged, while the cashier of the Bank of Summers denies that he so stated and says that what he said was that the said indebtedness had been "paid down" (meaning reduced). And, second, there is involved in the testimony of the two cashiers the question as to whether it was agreed and understood between them, subsequent to the sale by the trustee, that the sum of $800.00 would be accepted by the National Bank of Summers in full of all claims which it had against the property of John Ed Williams which was involved in the several deeds of trust. It is our opinion, however, that a decision of this case does not properly involve the issues presented by the conflict of testimony of the bank cashiers. There was misunderstanding between them, but that is not important herein.

The essence of this controversy involves the right of Cora Simpson to be subrogated to the lien of the National Bank of Summers under the deed of trust of February 25, 1921. She was not a participant in any understanding, or, unfortunately, misunderstanding, between the cashiers of the two banks, nor are her rights affected by the fact that the National Bank of Summers accepted a check of Dunlap, trustee, for $800.00 which carried the notation above quoted. In so far as the assertion of her right is concerned, these other matters are not pertinent. *Res inter alios acta alteri nocere non debet.*

It is urged by the plaintiffs that novation of the debt secured by the deed of trust of February 25, 1921, arose from the fact that the National Bank of Summers carried renewals from February, 1925, to October, 1929, which were not endorsed by the original payee and endorser, Jordon Peters. During that time, as already noted, the renewals were endorsed by Rush Simpson instead of Jordon Peters. In this connection it should be recalled that from October, 1929, both Peters and Simpson were endorsers of the renewals. In our opinion, novation does not result from these facts. "Novation is the substitution of one debtor by mutual agreement for another, whereby the old debt is extinguished." *Chenoweth* v. *Na-*

*tional Bldg. Ass'n*, 59 W. Va. 653, 53 S. E. 559, 560. That no such substitution was intended in this case is evidenced by the fact that Peters re-appeared as an endorser and has so continued. The *Chenoweth* case is also authority for the proposition, quoted with approval from *Henry* v. *Nubert*, (Tenn.) 35 S. W. 444: "A novation is never presumed, but must be established by the full discharge of the original debt, by the express terms of the agreement or acts of the parties, whose intention must be clear."

There being no novation, the next phase of our inquiry involves the right of Cora Simpson after having discharged the $600.00 balance of the original debt to assert her right to the benefit of the trust lien. Her husband, Rush Simpson, had become an endorser on renewals of the note from February, 1925, until his death. He thus fastened liability upon himself and his estate. This condition existed when he conveyed his property to his wife, Cora. The property he conveyed to her being thus liable, for the debt, she was in nowise a volunteer in discharging that liability.

By the very terms of the deed of trust executed by Williams and wife February 25, 1921, it stood as security for the payment of the original note of $3,000.00 and for all renewals and to protect the named endorser, Jordon Peters. We now look not to the requirement of the trust that it should be for the protection of Peters, but to the requirement that it should stand as security for the debt. With such trust in being as security for the debt, and the unpaid balance of the debt being discharged by one whose property had become laible on account thereof, we perceive no reason why the doctrine of subrogation is not applicable. "The doctrine of subrogation is that one who has the right to pay and does pay a debt which ought to have been paid by another, is entitled to exercise all the remedies which the creditor possessed against that other." *Bassett* v. *Streight*, 78 W. Va. 262, 88 S. E. 848, 850. Subrogation applies "to persons standing in the relation of sureties, or of one bound in person or property for or with another." *Rosenbaum* v. *Goodman*, 78 Va. 121.

The payment by Cora Simpson to the National Bank of Summers of the $600.00 balance of the debt secured by the John Ed Williams deed of trust of February 25, 1921, is the

fact of primary importance in this case. Another fact, outstanding and dominating, is that the said deed of trust of February 25, 1921, was duly of record in the office of the clerk of the county court of Summers County, unreleased. There it stood as a giant semaphore—a signal to be heeded by all, proclaiming danger ahead to him who should undertake to acquire an interest in or title to the real estate therein described, so long as there was no proper release of record. "It is the duty of one purchasing real estate to examine the records; and, whether he does so or not, he is affected with notice of every fact the knowledge of which might have been obtained from the record, or to which the facts there appearing would have led him." Pt. 2 Syl. *Smith* v. *Owens,* 63 W. Va. 60, 59 S. E. 762.

In the light of all of which we are of opinion that the learned chancellor was in error when he enjoined the trustee, T. N. Read, from making sale of the John Ed Williams property under the deed of trust of February 25, 1921, for the purpose of reimbursing Cora Simpson in the amount which she paid the National Bank of Summers in discharge of the balance of the 'debt secured by said trust.

Therefore, we reverse the decree of the chancellor, dissolve the injunction and dismiss the bill.

*Reversed and rendered.*